STATE BANK OF OMAHA, PLAINTIFF, v. HERBERT B. WALDRON, APPELLANT: LIZZIE C. MORTON RUTH ET AL., APPELLEES.

FILED DECEMBER 26, 1919.   No. 20642.

**Mortgages:** FORECLOSURE: COUPON NOTES. A third party, claiming an interest in mortgaged real estate, took over two of the overdue interest coupon notes of the debt, to prevent a foreclosure of the mortgage. On a subsequent default, foreclosure was brought, and he then attempted to set up the notes as part of the mortgage lien against the premises. On the issue of fact between the mortgagor and himself, as to whether he paid the notes as a volunteer, or took them by purchase and assignment from the mortgagee, the evidence *held* sufficient to show that he took the notes by purchase and assignment.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Byron G. Burbank,* for appellant.

*Morsman, Maxwell & Crossman* and *Thomas Lynch,* contra.

MORRISSEY, C. J.

This action was brought by the State Bank of Omaha to foreclose a mortgage of $7,000 on a tract of real estate in Douglas county. Herbert B. Waldron, Florence G. Waldron, Lizzie C. Morton Ruth, Edmund P. Dunlap, and Carrie J. Dunlap were defendants. Before judgment, plaintiff bank dismissed its cause of action, and trial was had on the pleadings hereinafter mentioned.

Appellee Ruth, by answer and cross-petition, set up a mortgage of $24,000 upon the real estate, signed and executed by defendants Waldron, alleged, default in payment and prayed a foreclosure. Appellees Edmund P. Dunlap and Carrie J. Dunlap, his wife, filed a cross-petition, alleging that, February 15, 1916, in an action then pending in the district court for Douglas county, a decree was entered awarding the title and right of possession

104 Neb.—6

of the real estate involved in this action to Dunlap, sub-
ject, however, to a mortgage of $24,000 held by Lizzie C.
Morton Ruth; and that an appeal was prosecuted from
this decree to the supreme court, where the judgment was
set aside and the action dismissed. It is further alleged
that, pending the appeal in the supreme court, Dunlap,
to protect his interests under the decree, and in order to
prevent a foreclosure of the $24,000 mortgage held by
Mrs. Ruth, purchased from her two of the interest coupon
notes for which the mortgage was given as security,
amounting at the date of the purchase to $1,354.85. The
cross-petitioners Dunlap and wife prayed that the cou-
pons be decreed a part of the mortgage, and be made to
constitute a charge and lien against the real estate. Ap-
pellants Waldron filed a general denial to the cross-peti-
tion of appellees Dunlap. The court entered a decree of
foreclosure in favor of Mrs. Ruth for the amount due on
her mortgage, and in favor of Dunlap for the amount of
the two coupon notes, and made the same a lien upon the
premises, subject and junior to the lien found in favor of
Mrs. Ruth.

Defendants Waldron, who appear to be the holders of
the equity of redemption, do not appeal from the decree in
so far as it is in favor of Mrs. Ruth, but prosecute this
appeal solely from that part of the decree based upon the
coupon notes held by appellee Dunlap. The position of
appellant is that Dunlap voluntarily paid Mrs. Ruth the
interest represented by the two coupon notes, and that
the court, having finally determined in the action hereto-
fore mentioned that he had no interest in the premises,
Dunlap was not entitled to be subrogated to any of the
rights or interests of Mrs. Ruth under the mortgage.

The controlling question is: Did Dunlap purchase the
two coupon notes, or did he voluntarily pay them for the
benefit of appellant? The principal note, with the coupons
attached, was in the hands of Mr. Crossman, attorney
for Mrs. Ruth. The coupons in question were due, and
the attorney, in good faith, dealt with the attorney for

Dunlap. As a result of these negotiations, Dunlap's attorney paid the full amount due on the coupons to the attorney for Mrs. Ruth and, following the instruction of his principal, took over the coupon notes. The correspondence between appellee and his attorney, and between the latter and the attorney for Mrs. Ruth, is set out in the record. Dunlap wrote his attorney: "I am sending a draft for $1,354.85 to take over the coupon note of Mrs. Ruth. Now, do what you think is best." In another letter he wrote: "Send those coupons here, and can take them to the bank and use them for collateral to the other interest."

Letters from appellee's attorney to his client are also in evidence, and in none of these is it suggested that the notes be paid, but the correspondence refers to the taking over of the notes, or to assignments. There is also a letter from the attorney for Mrs. Ruth. In this letter he speaks of an offer which he had theretofore made to indorse the notes without recourse upon his client, but explains that such a proposition was with the understanding that any right of lien which appellee might acquire by reason of the coupon notes should be junior to the lien of his client. After some negotiations, the notes were delivered to Dunlap's attorney and the money paid to the attorney for Mrs. Ruth.

Appellant called Mrs. Ruth, the owner of the notes, as a witness, and in answer to interrogatories she testified that she did not sell the notes to appellee; that she had not been asked to indorse them, and had not indorsed them; and that she had not authorized any one to sell them. She said that she had given them to her attorney to collect. She is a woman advanced in years, and was in feeble health. Her testimony shows that she had not seen the notes before and could not identify them when they were presented. She said: "Mr. Crossman does all my legal business and has all my papers. I have been sick for a long time, and I have not been able to attend to anything.    *    *    *    I told you I put my papers in Mr.

Crossman's hands, and as he had legal ability and knew what to do, I was out of it, because I was sick, and this matter has been hanging in court and torturing me for four years, and it is ruining my health." This indicates that Mr. Crossman, her attorney, was instructed only in a general way to look after her business. She does not complain of the conduct of her attorney, but expressly compliments him upon his ability. He carefully guarded her interests; he received the money and preserved her lien as the first and superior lien upon the premises. She has not repudiated his transfer of the notes. The correspondence between appellee and his attorney indicates that appellee did not intend to pay the notes, but intended to acquire their ownership. This is indicated, not only by the fact that the notes were received without being marked paid, but by the fact that he intended to put them up as collateral. Neither of the attorneys use the word "paid" or "payment," but the language employed indicates a transfer of ownership.

We are convinced that the trial court correctly found that the ownership of these notes was in appellee. They are a valid obligation, and the amount due thereon was properly made a lien upon the mortgaged premises, and the judgment is

AFFIRMED.

SEDGWICK, J., not sitting.